**Albert NAHMIAS and Dora Nahmias, Plaintiffs-Appellants,**

v.

**TRUSTEES OF INDIANA UNIVERSITY, Indiana University Hospital and Beng Tek Joe, M.D., Defendants-Appellees.**

No. 1–682A154.

Court of Appeals of Indiana,
First District.

Feb. 2, 1983.

Rehearing Denied March 7, 1983.

Davis & Davis, Greenfield, Howard S. Young, Jr., Young & Young, Indianapolis, for plaintiffs-appellants.

Richard L. Fairchild, Stewart Irwin Gilliom Fuller & Meyer, Indianapolis, for defendant-appellee Dr. Beng Tek Joe.

Ralph A. Cohen, Frederick Wm. La Cava, Ice, Miller, Donadio & Ryan, Indianapolis, for defendant-appellee Trustees of Indiana University, Indiana University Hosp.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Albert and Dora Nahmias appeal the granting of summary judgment in favor of Trustees of Indiana University (University), Indiana University Hospital (Hospital), and Beng Tek Joe, M.D. (Dr. Joe), on the grounds that their claim was barred by the medical malpractice statute of limitations. We affirm.

## FACTS

In October 1976, Albert Nahmias was found to have cancer of the bladder. Treatment was planned in three stages: (1) diversion of urine from the bladder, (2) radiation of the pelvic area to destroy as much of the tumor as possible, and (3) surgical removal of the bladder, prostate, seminal vesicles, and most of the fat and lymph nodes in that area.

On October 27, 1976, the urinary diversion was performed by Dr. Frankel, Albert's urologist. This was accomplished by means of an ileal loop, whereby the ureters were severed and connected to a loop of bowel which was then severed from the bowel, closed at one end, and drained through Albert's side. Following his recovery from this procedure, Albert was referred to the Indiana University Medical Center, Department of Radiology, for the radiation therapy. Dr. Joe was the radiotherapist administering this treatment. Albert's radiation therapy treatments were in November and December 1976. The last contact with Dr. Joe and Hospital was on or about January 24, 1977.

Subsequent to the completion of the radiation therapy, Albert began urinating normally rather than through the ileal loop. He informed Dr. Frankel of this about January 17, 1977, who advised Albert this was a complication from the radiation. In February 1977, Albert was hospitalized at Winona Hospital. He had stopped urinating and became extremely ill. Surgery then was performed on February 12, 1977, and a tube was put directly into the kidney. Two months later, further surgery was performed, the original intention of which was to refix the ileal loop. However, the ileal loop and ureters had been destroyed by the radiation and the ileal loop was not functioning. The removal of the bladder, prostate, and seminal vesicles was then performed. The Nahmiases were informed by Dr. Frankel in April or May of 1977 that the ileal loop was damaged, the ureters were eaten up, and that such was the result of radiation damage.

Since this time, Albert has suffered permanent kidney failure necessitating dialysis three times per week. Albert and Dora were not given any expert medical opinion that Albert had been the victim of medical malpractice until April 18, 1979, when Dr. Frankel told them it was his opinion that Albert's problems resulted from medical malpractice in the radiation treatment. Albert and Dora commenced this action on March 5, 1981, to recover damages for personal injuries and loss of consortium. The trial court granted summary judgment to all defendants and entered the following findings of fact, conclusions of law, and judgment:

*"Findings of Fact*

"The following facts are undisputed and form the basis for judgment.

1. Plaintiff Albert Nahmias was given radiation therapy as part of his treatment for cancer of the bladder by defendant Dr. Beng-Tek Joe at Indiana University Medical Center, owned and operated by defendant Trustees of Indiana University (Indiana University Hospital).

2. Dr. [sic] Nahmias' last professional contact with Dr. Joe and the I.U. Medical Center was on or about January 24, 1977 and more than two years prior to the date of filing of the present complaint, February 6, 1981.

3. On or about February 12, 1977, and more than two years prior to the date of filing of the present complaint, February 6, 1981, plaintiffs were informed by Mr. Nahmias' physician, Dr. Frankel, that the radiation therapy had produced an abnormal result which had caused injury to Mr. Nahmias.

4. Plaintiffs' complaint states no allegation of fraud, actual or constructive, against either defendant or any of them, and plaintiffs' counsel at oral argument heard January 19, 1982 stated that plaintiff was not advancing or relying on any argument tolling the Statute of Limitations on grounds of actual or constructive fraud by defendants or any of them, and the Court finds no evidence of any fraud, actual or constructive, by the defendants or any of them.

### Conclusions of Law

1. The law is with the defendants and each of them and against the plaintiffs.

2. Plaintiffs' complaint against defendants and each of them are barred by the applicable Statute of Limitations, I.C. 16–9[.]5–3–1.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that judgment is hereby ordered for defendant, Indiana University and Indiana University Hospital and for the costs of this action."[1]  Record at 183–85.

### ISSUES

The sole issue presented for our review is whether or not the trial court erred in granting summary judgment to the University, Hospital, and Dr. Joe on the grounds that the Nahmiases' claims were barred by the statute of limitations in the Indiana Medical Malpractice Act.

### DISCUSSION AND DECISION

■  Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Moll v. South Central Solar Systems, Inc.,* (1981) Ind.App., 419 N.E.2d 154; *Kendrick Memorial Hospital v. Totten,* (1980) Ind.App., 408 N.E.2d 130. In reviewing the granting of summary judgment by the trial court, our function is to determine first if a genuine issue of material fact exists, and if none, whether the court properly applied the law.

*Matter of Garden & Turf Supply Corp. v. Strange,* (1982) Ind.App., 440 N.E.2d 710; *Zalewski v. Simpson,* (1982) Ind.App., 435 N.E.2d 74, *trans. denied.* Here, the trial court found there was no genuine issue of fact, and the record supports that conclusion. Therefore, we must determine if the trial court correctly construed and applied the law in determining that the Nahmiases' claims were barred by the applicable statute of limitations.

The Indiana Medical Malpractice Act, Ind.Code § 16–9.5–1–1 *et seq.,* became effective July 1, 1975. The statute of limitations provision in that act, Ind.Code § 16–9.5–3–1 (Burns Supp.) provides:

"No claim, whether in contract or tort, may be brought against a health care provider based upon professional services or health care rendered or which should have been rendered unless filed within two [2] years from the date of the alleged act, omission or neglect except that a minor under the full age of six [6] years shall have until his eighth birthday in which to file. This section applies to all persons regardless of minority or other legal disability."

Albert was 66 years old at the time of the radiation therapy. It is undisputed that the radiation treatments at Hospital under Dr. Joe's care were in November and December of 1976 and that Albert last saw Dr. Joe in January 1977. Thus, unless there is some recognized exception to the statute available to the Nahmiases, the statute of limitations clearly had run when suit was filed in 1981.

■  The Nahmiases contend that the statute of limitations did not begin to run against them until April 18, 1979, the first date they were told by Dr. Frankel that there had been medical malpractice in the radiation therapy. Since this action was commenced within two years from the date they first obtained expert medical opinion of the existence of malpractice, they argue the action was commenced within the time limits of the statute. Nahmiases further argue that any other construction of the

---

1. Identical findings, conclusions, and judgment were entered in favor of Dr. Joe.

medical malpractice statute of limitations renders that act unconstitutional. For reasons which we shall demonstrate, we cannot agree with either contention.

The constitutionality of Indiana's medical malpractice act generally has been upheld. *Johnson v. St. Vincent Hospital, Inc.,* (1980) Ind., 404 N.E.2d 585. Our supreme court in *Johnson* recognized the problems faced by health care providers with regard to malpractice claims and the inability to obtain adequate malpractice insurance coverage at reasonable prices, if at all. The court found that the legislature had acted constitutionally in responding to those problems in the public interest. The court in *Johnson* dealt specifically with the limitation of actions provision relating to minors and found no constitutional infirmity.

The statute of limitations in the 1975 medical malpractice act has been the subject of other decisions of this court. In *Gooley v. Moss,* (1979) Ind.App., 398 N.E.2d 1314, *trans. denied,* we held that a plaintiff who was twelve years old when sterilized by a hysterectomy performed on June 18, 1970, whose malpractice action was filed April 3, 1978, was barred from asserting her claim by the two year limitation provisions of the 1975 act. (Ind.Code § 16–9.5–3–1)

In *Carmichael v. Silbert,* (1981) Ind.App., 422 N.E.2d 1330, *trans. denied,* we held that IC § 16–9.5–3–1 barred a plaintiff operated on in February and March of 1977, whose action was filed February 5, 1980. We further found the limitation provision not violative of either the due process clause of the Fourteenth Amendment to the United States Constitution or of the privileges and immunities clause of the Indiana Constitution. We pointed out that the medical malpractice statute of limitations is tied to the date of the "alleged act, omission, or neglect complained of" rather than the accrual of the cause of action as in the case in the general tort limitations statute. In *Carmichael,* we recognized that harsh consequences could result in particular cases, but that "the Medical Malpractice Act was enacted . . . to prevent the loss of health care services. The statute of limitation

contained in the Act is rationally related to the purpose of the Act, and those who cannot comply with its provisions must suffer the consequences." 422 N.E.2d at 1334.

Our supreme court, since *Johnson,* again has had occasion to deal with constitutional attack to the statute of limitation portion of the 1975 act. In *Rohrabaugh v. Wagoner,* (1980) Ind., 413 N.E.2d 891, the appellant, a minor between six and eighteen at the time of treatment, brought a malpractice action in 1979, more than two years after treatment. The supreme court upheld the statute as it affects minors, against claims of denial of equal protection and denial of access to the courts. Justice De-Bruler, speaking for the court, stated:

"The Medical Malpractice Act is a legislative response to the reduction of health care services available to the public in the state. This reduction was the result of choices being made by trained and available health care providers to stop making their services available. The legislative judgment was that these decisions were being made because of actual and threatened loss to the health care industry of malpractice insurance at a reasonable cost.

The Legislature chose to attack this problem on several levels. One of these involved limiting patient remedies and the statute of limitation provisions involved here are part of it.

\*     \*     \*     \*     \*     \*

We find that there exists a reasonable basis for the Legislature to strengthen the statute of limitation in malpractice cases in furtherance thereof to conclude that children of this class and adults are similarly circumstanced with regard to their ability to bring malpractice actions. There can be no doubt that this measure is a stern one and will have harsh application in individual cases. However, a court has no authority to annul a statute because of that fact. In including children of this class with adults for these purposes, the aim of the statute was furthered in a manner consistent with the protection afforded by our State and Fed-

eral Constitutions to equal protection of the laws."

413 N.E.2d at 894–95.

In considering the former medical malpractice statute of limitations, Ind.Code § 34–4–19–1,[2] which was, for all practical purposes, identical to the present act, our courts have created, in effect, a fraudulent concealment exception to the statute of limitations in malpractice cases. *Guy v. Schuldt,* (1956) 236 Ind. 101, 138 N.E.2d 891; *van Bronckhorst v. Taube,* (1976) 168 Ind. App. 132, 341 N.E.2d 791, *trans. denied. See also Carrow v. Streeter,* (1980) Ind. App., 410 N.E.2d 1369 (reversing a summary judgment based on the statute of limitations on the ground a genuine issue of material fact existed as to whether the statute of limitations was tolled by fraudulent concealment.) Strictly speaking, the fraudulent concealment doctrine is not an exception to the medical malpractice statute of limitations that the time begins to run from the date of the act, omission, or neglect complained of. Rather, it is an equitable estoppel precluding the defendant guilty of fraudulent concealment from asserting the statutory bar. *van Bronckhorst.* However, the fraudulent concealment exception or equitable estoppel is not available to the Nahmiases since it is not contended that any such issue exists in this case.

The Nahmiases earnestly contend that the medical malpractice statute must be interpreted as a "discovery" statute rather than as an "occurrence" statute. Although there are statements that the statute is an "occurrence" statute, *Alwood v. Davis,* (1980) Ind.App., 411 N.E.2d 759, *trans. denied; Carrow,* "discovery" language has been employed in construing the 1941 act (IC 34–4–19–1). In *Snyder v. Tell City*

*Clinic,* (1979) Ind.App., 391 N.E.2d 623, 628, Judge Lybrook wrote: "The malpractice statute of limitations, Ind.Code 34–4–19–1, does not deprive a patient of a malpractice remedy if he did not and could not have known of his claim within two years of the initial act, omission, or neglect. *Toth v. Lenk,* (1975) 164 Ind.App. 618, 330 N.E.2d 336." In *Toth v. Lenk,* (1975) 164 Ind.App. 618, 330 N.E.2d 336, the case relied upon in *Snyder,*[3] Toth was treated by Dr. Lenk from October 9, 1968, until early April 1969. Although Toth's problems continued he did not go back to Dr. Lenk. Rather, he returned to his native Hungary in May or June of 1969 and consulted other physicians. He returned to the United States and saw Dr. Lenk for a re-employment physical examination. However, he had lost confidence in Lenk and saw another doctor on June 7, 1970, when he first learned of the alleged malpractice. Suit was filed against Dr. Lenk on June 7, 1972. Summary judgment was granted in favor of the physician based upon the 1941 medical malpractice statute of limitations, IC 34–4–19–1. In affirming that judgment, this court referred to the requirement that a medical malpractice action must be filed within two years of the act, omission, or neglect, and not within two years of the accrual of the case as in the general tort statute of limitations. Judge Garrard stated for the majority in *Toth:*

"There can be no doubt that the legislature did not intend actual discovery to be the event that triggers the commencement of the statutory period.

Furthermore, as observed by the Court in *Guthrie v. Wilson* (1959), 240 Ind. 188, 162 N.E.2d 79, statutes of limitations generally address merely the remedy rather

**2.** "34–4–19–1 Malpractice—Limitation of actions.—No action of any kind for damages, whether brought in contract or tort, based upon professional services rendered or which should have been rendered, shall be brought, commenced or maintained, in any of the courts of this state against physicians, dentists, surgeons, hospitals, sanitariums, or others, unless said action is filed within two [2] years from the date of the act, omission or neglect complained of. [Acts 1941, ch. 116, § 1, p. 328.]"

This statute would appear to be superseded by IC 16–9.5–3–1 effective July 1, 1975.

**3.** *Snyder v. Tell City Clinic* ultimately held the claim barred by the statute of limitations because of Snyder's failure to exercise due diligence and failure to follow physician's advice. Therefore, the court said there was no exception available to him.

than the right. They are not therefore violative of due process, at least, so long as a potential plaintiff is afforded some not unreasonably short period of time within which to bring his action."

164 Ind.App. at 621, 330 N.E.2d 336.

" * * *

Thus, while our statute speaks of the 'act, omission or neglect complained of' it does not appear that the legislature thereby intended to deprive a patient of a remedy by way of an action for malpractice if he did not and *could not* have known of his claim within two years after the initial act, omission or neglect. As heretofore mentioned, the reason for the more restrictive language in the malpractice statute appears designed to preclude delaying operation of the statute until damage or injury actually occurs." (Footnote omitted.)

164 Ind.App. at 621–22, 330 N.E.2d 336.

" * * *

Accordingly, where the patient learns of the malpractice or learns information which would lead to discovery of the malpractice if the patient exercised diligence to discover, the statute will commence to run." (Citations omitted; footnote omitted.)

164 Ind.App. at 623, 330 N.E.2d 336.

"The evidence most favorable to Toth clearly establishes that at some time prior to June 6, 1970, two years before suit was commenced, Toth ceased relying on Lenk and decided to secure no further treatment from him. At the time he did this he was aware of the continuing nature of his problem and was convinced that Lenk was not properly identifying the problem or providing proper treatment. This series of undisputed facts fulfills the requirements to set the statute of operation. It is knowledge of the condition or 'injury' rather than its reason that destroys the estoppel and permits the statute to operate. [Citation omitted.]

Thus, in lay language, *where the patient knows or concludes that something is wrong in the diagnosis or treatment he has been given, he is chargeable as a matter of law with the additional knowledge he would have procured had he exercised diligence to discover it.*

The only reasonable inference to be drawn from the facts at bar is that the statute commenced to run prior to June 6, 1970. [Emphasis added.]"

164 Ind.App. at 624–25, 330 N.E.2d 336.

Our supreme court in *Chaffin v. Nicosia,* (1974) 261 Ind. 698, 702, 310 N.E.2d 867, 870, in holding that the statute granting minors until two years after attaining majority to institute actions controlled over the two years from the act, neglect, or omission provision of IC 34–4–19–1 (the 1941 act)[4] observed, quoting from *Ayers v. Morgan,* (1959) 397 Pa. 282, 154 A.2d 788, "it would be illogical and unintelligent to say that a person who does not know, and cannot know ... would be denied damages because his claim was filed, due to delay in learning ... more than two years after the operation."[5]

Although *Alwood* stated that the limitation provisions of the 1941 act stated an occurrence rule, by way of dictum the court expressed some concern as to the constitutionality of the occurrence rule by saying: "We have not though, ruled out the possibility of deciding in a future case that this occurrence rule must be applied as though it was a discovery rule due to the questionable constitutionality of the occurrence rule." 411 N.E.2d at 761.

In *Adams v. Luros,* (1980) Ind.App., 406 N.E.2d 1199, the plaintiff saw the physician in January 1973 for back pain and partial paralysis of the leg. In July he was told to live with it and to return if the condition worsened. In 1976 the patient experienced more difficulty. In 1977, after seeing an-

---

4. The 1975 act, IC 16–9.5–3–1, clearly overrules the holding in *Chaffin v. Nicosia* in that it expressly applies to minors.

5. *See* dissenting opinion of Chief Justice Givan in *Shideler v. Dwyer,* (1981) Ind., 417 N.E.2d 281, an attorney malpractice case, where a persuasive argument for a discovery rule is presented.

other doctor, a tumor on the spinal cord was discovered. Suit was filed on February 26, 1979, alleging malpractice in not ordering a myelogram. Summary judgment based upon the statute of limitations (IC 34–4–19–1) was granted in favor of the physician. Fraudulent concealment was not raised as an issue. The trial court ruled as a matter of law that in January 1977, the plaintiff possessed enough information that could reasonably have led him through diligent effort to the discovery of the malpractice. In reversing, we held there was a factual controversy as to exactly when the patient, as a reasonable person, had sufficient knowledge to know that the malpractice had occurred. "The fact that, in January of 1977, Adams knew or should have known that a complete myelogram was not taken does not mean, as a matter of law, that Adams had sufficient knowledge to deduce that malpractice had taken place." 406 N.E.2d at 1203.

With regard to statutes of limitations generally, it has been held that statutes of limitations affecting existing rights are not unconstitutional if a reasonable time is given for the commencement of an action before the bar takes effect. *Short v. Texaco, Inc.,* (1980) Ind., 406 N.E.2d 625, *aff'd,* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738. The court alluded to cases holding periods of nine months and seventeen days and six months reasonable.[6] A six month statute of limitations was held not to be so short as to amount to a practical denial of the right itself and thus a denial of justice in *Wright-Bachman, Inc. v. Hodnett,* (1956) 235 Ind. 307, 133 N.E.2d 713. Our supreme court has upheld the ten year statute of limitations in product liability cases in a case where the alleged wrongful death occurred more than ten years after the airplane involved was first placed into commerce. This statute was determined not to be violative of the state constitution provision guaranteeing access to open court. *Dague v. Piper Aircraft Corp.,* (1981) Ind., 418 N.E.2d

207. Justice Pivarnik writing for a unanimous court stated:

"It is not our office to question the wisdom of the legislature's enactments. As a reviewing court, we will not substitute our judgment or opinion on such matters for that of the legislature. [Citations omitted.]

\*      \*      \*      \*      \*      \*

We observe at the outset that our legislature clearly has the power to abrogate or modify common law rights and remedies. In *Sidle v. Majors,* [ (1976) 264 Ind. 206, 341 N.E.2d 763], we stated: 'Both this Court and the United States Supreme Court have upheld the right of states to abolish or modify the common law.' 264 Ind. at 209, 341 N.E.2d at 766.... Moreover, there is no vested or property right in any rule of the common law, and the right to bring a common law action is not a fundamental right. [Citations omitted.] Plaintiff here is not in the position of having had a vested right taken from her. Her cause of action had not yet accrued at the time the no-cause provision became effective under the act; at the time of her loss and damages, there was no cause of action existing, by virtue of section five's time limitations. Thus, she had no vested right in a remedy." (Insertion ours.)

418 N.E.2d at 212, 213.

In the final analysis, we note that the Indiana Medical Malpractice Act, including its limitation of action provisions, has survived constitutional attack. Despite the question raised by the court's dictum in *Alwood,* we need not decide whether interpreting the statute of limitations as an "occurrence rule" rather than a "discovery rule" bears some possible constitutional infirmity. Under either construction, the Nahmiases' claims are clearly barred. Their contention that the running of the statute was not triggered until April 1979 when, for the first time, Dr. Frankel told

---

**6.** *Cf. Guthrie v. Wilson,* (1959) 240 Ind. 188, 162 N.E.2d 79, holding that the 1941 statute (IC 34–4–19–1) could not within constitutional bounds be applied retroactively so as to bar appellant's cause where the act or neglect was in 1937. The 1941 act had a ninety day grace period. The appellant was a minor.

them it was his expert opinion that malpractice had occurred in the radiation therapy is clearly wrong. *Toth.* If the statute is a discovery statute, which we need not and do not decide, preferring to defer that determination until the question is squarely presented, discovery occurred either in February 1977 when they were advised that the problems Albert was experiencing was a complication of the radiation or in April or May of the same year when Dr. Frankel advised them that the ileal loop and ureters had been damaged by the radiation. This, under *Toth,* was sufficient to put them on notice, and the exercise of reasonable diligence required them to pursue the matter to determine the cause of the problem. This is not a case of a patient who did not and could not discover the possibility of malpractice until after the two year limitation had expired. Here, the "act, omission, of neglect complained of" was in November and December 1976. Under strict application of an "occurrence rule," the statute ran in December 1978. Discovery, or the means thereof, existed in February 1977, some twenty-two months, or, not later than May 1977, nineteen months before the time expired under the occurrence rule, which clearly gave Nahmiases a reasonable time to institute their malpractice actions. Even if one applies a "discovery rule," as it is limited by *Toth,* the statute would have run at the latest in May 1979. The action here was not commenced until March 5, 1981, well past the two year limitation under either interpretation of the statute. The trial court's granting summary judgment based upon the medical malpractice statute of limitations was proper.

Judgment affirmed.

ROBERTSON, P.J., and NEAL, J., concur.