Imogene MARTIN, Administratrix of the Estate of Roy Martin, Appellant (Plaintiff Below),

v.

Larrie G. RINCK, D.O., Appellee (Defendant Below).

No. 4–785A188.

Court of Appeals of Indiana, Fourth District.

Dec. 16, 1986.

Lowell E. Enslen, Gary K. Matthews, Hammond, for appellant.

Larry G. Evans, Katharine E. Gerken, Valparaiso, for appellee.

CONOVER, Presiding Judge.

## STATEMENT OF THE CASE[1]

Plaintiff-Appellant Imogene Martin (Martin), administratrix of the estate of Roy Glenn Martin, appeals the grant of Defendant-Appellee Larry G. Rinck's (Rinck) motion for summary judgment, Ind. Rules of Procedure, Trial Rule 56, as a preliminary determination under IND. CODE 16–9.5–10–1.[2]

We reverse.

## ISSUES

Martin presents four issues for our review. Since we reverse, we address only the following restated issue:

whether the trial court erred in granting a motion for summary judgment when there remained unresolved material issues of fact.

## FACTS

The facts viewed in a light most favorable to Martin reveal on January 28, 1977, Roy Glenn Martin (Roy) was admitted to Our Lady of Mercy Hospital in Dyer, Indiana, for treatment of a strangulated right inguinal hernia. Rinck was the attending physician. Although Rinck was associated with the medical clinic where Roy had gone over the years for his medical needs, this was the first time Roy was treated by Rinck. As part of his routine admissions testing, Rinck ordered a chest x-ray on Roy. The x-ray report stated:

There is a soft tissue mass density at the right lung base behind the heart measuring 5 cm. in largest diameter. Laminogram is suggested for further evaluation.

Tumor of the right lung as well as herniation of the bowel loops into the chest can be suspected.

(R. 58). Rinck testified he had no recollection of disclosing this information to Roy or his family. After his release, Roy continued to be treated by Rinck until August 5, 1977. Rinck's office records showed Roy to be "okay" and progressing properly from surgery. However, his records are silent as to whether anything was done to follow up the x-ray report. Roy died of cancer on September 20, 1977.

On September 20, 1981, Roy's daughter, working at the same hospital where her father was treated, discovered the January 28, 1977, x-ray report. The daughter told her brother and sister of the report. Later, on October 9, 1981, the children told Martin of the report. On December 4, 1981, Martin was appointed administratrix of Roy's estate. On January 18, 1982, Martin, as administratrix, filed a proposed complaint against Rinck with the Indiana Department of Insurance.[3] She alleged medical malpractice resulting in Roy's wrongful death.

During the course of the proceedings, Rinck moved for a preliminary determination under IND. CODE 16–9.5–10–1. The motion for preliminary determination was a motion for summary judgment[4] on the grounds Martin had failed to meet the conditions precedent for the institution of suit under the Wrongful Death Act, IND.

---

1. This case comes to us on remand from the Indiana Supreme Court. Our earlier opinion was vacated by the Supreme Court, *see Martin v. Rinck* (1986), Ind.App., 491 N.E.2d 556. In our earlier opinion, we determined Martin had failed to meet the conditions precedent to bringing suit under the Wrongful Death Act, relying in part on *Warrick Hospital, Inc. v. Wallace* (1982), Ind.App., 435 N.E.2d 263 (*trans. denied*). Our opinion was published before the Supreme Court expressly overruled the portions of *Warrick* on which we had relied. See *Community Hospital of Anderson and Madison County v. McKnight* (1986), Ind., 493 N.E.2d 775, 777.

2. IC 16–9.5–10–1, in pertinent part, reads:

    Sec. 1. A court having jurisdiction over the subject matter and the parties to a proposed complaint filed with the commissioner under this article may, upon the filing of a copy of the proposed complaint and a written motion under this chapter, (1) preliminarily determine any affirmative defense or issue of law or fact that may be preliminarily determined under the Indiana Rules of Procedure....

3. See IND. CODE 16–9.5–9–1.

4. See Ind. Rules of Procedure, T.R. 56.

CODE 34–1–1–2. Rinck further claims Martin's cause was barred by the statute of limitations contained in the Medical Malpractice Act, IND. CODE 16–9.5–3–1.[5] The trial court granted Rinck's motion for summary judgment. Martin appeals.

## DISCUSSION AND DECISION

Summary judgment is appropriate only if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Bernhardt v. State* (1985), Ind.App., 479 N.E.2d 1367, 1368; *Taylor-Chalmers, Inc. v. Board of Commissioners of LaPorte County* (1985), Ind.App., 474 N.E.2d 531, 532; *Penwell v. Western and Southern Life Ins. Co.* (1985), Ind. App., 474 N.E.2d 1042, 1044; Ind. Rules of Procedure, T.R. 56(C). As this court states with regularity:

> When reviewing the grant of a motion for summary judgment we stand in the shoes of the trial court. We must determine whether any genuine issue of material fact exists and whether the law was correctly applied.... We must liberally construe all evidence in favor of the non-movant and resolve any doubt as to the existence of a genuine issue against the proponent of the motion.... A fact is material if it facilitates resolution of any of the issues involved.... A fact is "material" for summary judgment purposes, if its resolution is decisive of the action or of a relevant secondary issue.... (Citations omitted).

*Penwell, supra,* at 1044.

Martin argues the two year period found in the Wrongful Death Act, IND. CODE 34–1–1–2, within which the personal representative of the decedent shall commence an action for wrongful death, is properly a statute of limitation. Therefore, she opines, it is subject to various defenses, including the defense of equitable tolling. Martin admits recent appellate cases have labeled the requirement as a condition precedent not subject to equitable tolling to maintain a cause of action, and not a statute of limitation. However, she submits such an interpretation is erroneous.

We no longer need decide whether a plaintiff must first comply with this requirement of the Wrongful Death Act prior to bringing a claim involving death under the Medical Malpractice Act. In *Community Hospital of Anderson in Madison County v. McKnight* (1986), Ind., 493 N.E.2d 775, our Supreme Court considered the relationship between the Wrongful Death Act and the Medical Malpractice Act. It vacated the opinion of the court of appeals and expressly overruled the portion of *Warrick Hospital, Inc. v. Wallace* (1982), Ind.App., 435 N.E.2d 263, which held the right to prosecute a claim for wrongful death based upon medical malpractice is governed by the Wrongful Death Act with regard to the parties eligible to bringing such a suit. The Supreme Court held the clear language of the Medical Malpractice Act rendered the requirement that a person pursuing a claim which involved the death of a patient against a health care provider must first be appointed the decedent's personal representative unnecessary. *Community Hospital, supra,* at 776.

▇ In light of the Supreme Court's finding the Medical Malpractice Act is not to be construed in conjunction with the Wrongful Death Act, we hold the conditions precedent contained in the Wrongful Death Act have no application here. Martin may bring an action under the Medical Malpractice Act without being appointed Roy's personal representative as required by the Wrongful Death Act.

▇ Rinck argues even if proceeding under the Medical Malpractice Act, Martin's complaint is barred by the act's statute of

---

**5.** IC 16–9.5–3–1 states

> Sec. 1. No claim, whether in contract or tort, may be brought against a health care provider based upon professional services or health care rendered or which should have been rendered unless filed within two (2) years from the date of the alleged act, omission or neglect except that a minor under the full age of six (6) years shall have until his eighth birthday in which to file. This section applies to all persons regardless of minority or other legal disability.

limitation, IND. CODE 16–9.5–3–1. Martin claims the statute is an "occurrence" statute, as opposed to one of "discovery". While we agree, *see, Hepp v. Pierce* (1984), Ind.App., 460 N.E.2d 186, 190; *Colbert v. Waitt* (1982), Ind.App., 445 N.E.2d 1000, 1002, we further note the doctrine of fraudulent concealment is applicable to Rinck's statute of limitation defense. *Colbert,* 445 N.E.2d at 1002.

■■■ A physician is under a duty to disclose material information to his patient, and failure to do so results in fraudulent concealment. *Weinstock v. Ott* (1983), Ind. App., 444 N.E.2d 1227, 1236. Fraudulent concealment will toll the statute of limitations in an action under the Medical Malpractice Act until (a) the end of the physician-patient relationship, (b) the discovery by the patient of the malpractice, or (c) the discovery of information which in the exercise of reasonable diligence would lead to the discovery of the malpractice. *Spoljaric v. Pangan* (1984), Ind.App., 466 N.E.2d 37, 40.

Martin claims the trial court erred in granting Rinck's motion for summary judgment since there remained unresolved the following issues of material fact:

1. whether Rinck's conduct constituted fraudulent concealment,

2. whether Rinck discharged his duty to inform Roy of the results of the chest x-ray ordered by Rinck, and

3. whether the physician-patient relationship terminated so as to commence the running of the statute of limitation defense.

■■■ While the proponent of the motion for summary judgment has the initial burden of demonstrating there are no genuine issues of material fact for trial, when such showing has been made, the opposing party must then present any genuine issues of fact which require a trial for their resolution. *Johnson v. Padilla* (1982), Ind.App., 433 N.E.2d 393, 396. The opposing party

may not rest solely upon the mere allegations of his pleadings. Instead, he must set forth the specific facts which establish there are genuine factual issues for trial. *Johnson, supra,* at 396. We conclude Martin has met her burden by showing material issues of fact as to her fraudulent concealment defense which can only be resolved by a trial on the merits, as we discuss below.

Martin testified in person and by deposition Rinck never disclosed the results of the x-ray report to either Roy or herself. Also, Rinck testified in his deposition he had no recollection of disclosing this information to Roy or his family. His records indicate no disclosure of the x-ray report, nor do they indicate any tests were made to follow up on the recommendation the report contained. On the contrary, Rinck's records indicate Roy was doing "okay" and progressing well from the surgery. Thus, the evidence demonstrates a factual controversy on a material issue remains unresolved, namely, whether Rinck met his duty to disclose material information to his patient, Roy.[6]

■■■ There also remains a factual controversy as to when and if the statute of limitations was tolled. The physician-patient relationship does not necessarily end with the patient's last office visit. *Van Bronckhorst v. Taube* (1976), 168 Ind.App. 132, 341 N.E.2d 791, 796. As stated by Judge Sullivan

Without regard to whether the permissible reliance by a patient upon a failure to disclose ceases as a matter of law upon termination of the physician-patient relationship, we hold that such termination of relationship when there has been affirmative misrepresentation as here alleged does not, as a matter of law, commence the clock ticking on the statute of limitations.

*Van Bronckhorst, supra,* 341 N.E.2d at 798. Here, we have an affirmative misrep-

---

6. Whether Martin was entitled to a partial summary judgment upon this state of the facts before the trial court as to her fraudulent conceal-

ment defense tolling the Medical Malpractice Act's statute of limitations is not before us. Martin made no such motion.

resentation by Rinck wherein he indicated Roy was doing "okay" and progressing well from the surgery. Such statements by Rinck do not as a matter of law commence the running of the applicable statute of limitations.

In addition, there is no evidence in the record Roy or his family knew or had reason to be put upon inquiry concerning the chest x-ray or the report prior to discovery of the x-ray report by Roy's daughter on September 20, 1981. Thus, here also, Martin has presented facts which establish genuine factual issues which can only be resolved by a full-blown trial.

Reversed and remanded for further proceedings consistent with this opinion.

MILLER and YOUNG, JJ., concur.