**Dianna S. CYRUS and Orville Cyrus, Plaintiffs–Appellants,**

v.

**Richard P. NERO and Ohio Valley Medical Group d/b/a Madison Clinic, Defendants–Appellees.**

**No. 72A01–8907–CV–255.**

Court of Appeals of Indiana, First District.

Nov. 21, 1989.

Corinne R. Finnerty, McConnell and Finnerty, North Vernon, for plaintiffs-appellants.

J. Anthony Goebel, Wyatt, Tarrant, Combs & Orbison, New Albany, for defendants-appellees.

BAKER, Judge.

## STATEMENT OF THE CASE

Plaintiffs-appellants, Dianna S. Cyrus and her husband, Orville Cyrus, appeal an adverse summary judgment on their action for medical malpractice against defendants-appellees, Richard P. Nero and Ohio Valley Medical Group, d/b/a Madison Clinic.

We affirm.

## STATEMENT OF THE FACTS

Richard P. Nero (Nero) is a physician employed by the Madison Clinic. On April 22, 1983, Nero was to perform certain surgical procedures upon Dianna Cyrus (Cyrus), including a sterilization procedure medically known as a bilateral tubal ligation. On May 26, 1983, Cyrus consulted with Nero for a postoperative visit. During the course of the consultation, Nero inquired as to whether Cyrus was using contraceptives. Cyrus responded that Nero was supposed to have "fixed her" during the surgery. After obtaining and reviewing Cyrus's file, Nero indicated "Yea I did." Cyrus specifically confirmed whether there was any possibility that she would become pregnant again to which Nero answered "No, no way." *Record* at 60.

In August of 1985, Cyrus discovered she was pregnant, and immediately consulted Nero. When confronted about her pregnancy, Nero initially offered Cyrus a free abortion which she refused. Nero then offered to provide free medical services for Cyrus's pre-natal care, the delivery of the baby, and a second sterilization procedure. Nero treated Cyrus in connection with her pregnancy continuously from August 6, 1985, until approximately six weeks after the birth of the child on April 2, 1986.

Nero did not charge any fee for the services he rendered in connection with the pregnancy.

On June 26, 1987, Cyrus filed a proposed complaint with the Indiana Insurance Commissioner pursuant to the Indiana Medical Malpractice Act, IND. CODE 16–9.5–1–1 to 16–9.5–10–5, alleging Nero negligently performed the bilateral tubal ligation on April 22, 1983. In response, Nero filed a motion for preliminary determination, asserting as an affirmative defense that Cyrus's claim was barred by the two-year statute of limitations applicable to medical malpractice claims. IND. CODE 16–9.5–3–1. Following a hearing, the trial court granted the motion on the basis of the expiration of the statute of limitations and entered summary judgment in favor of Nero. Cyrus appeals the propriety of this ruling.

### DISCUSSION AND DECISION

The rules governing summary judgment are well settled. In reviewing a motion for summary judgment, we apply the same standard as that employed by the trial court. Summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits and testimony show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Howard v. H.J. Ricks Constr. Co., Inc.* (1987), Ind.App., 509 N.E.2d 201, *trans. denied.* We will reverse only if the record discloses an unresolved issue of fact or an incorrect application of the law to undisputed facts. *Morris v. Lyons Capitol Resources, Inc.* (1987), Ind.App., 510 N.E.2d 221.

■ The statute of limitations applicable to medical malpractice claims, IND. CODE 16–9.5–3–1, provides in pertinent part:

(a) No claim, whether in contract or tort, may be brought against a health care provider based upon professional services or health care rendered or that should have been rendered unless filed within two (2) years from the date of the alleged act, omission or neglect. . . .

This statute has repeatedly been described as an "occurrence" rather than a "discovery" statute. *Jones v. Cloyd* (1989), Ind.App., 534 N.E.2d 257; *Guinn v. Light* (1988), Ind.App., 531 N.E.2d 534; *Ferrell v. Geisler* (1987), Ind.App., 505 N.E.2d 137, *trans. denied; Martin v. Rinck* (1986), Ind.App., 501 N.E.2d 1086; *Spoljaric v. Pangan* (1984), Ind.App., 466 N.E.2d 37, *trans. denied; Corbert v. Waitt* (1982), Ind.App., 445 N.E.2d 1000. Thus, an action for medical malpractice must be filed within two years from the date the alleged negligent act occurred rather than from the date it was discovered.

■ Cyrus argues, however, that the doctrines of fraudulent concealment or continuing wrong apply here and operate to toll the running of the statute of limitations. The doctrine of fraudulent concealment operates to estop a defendant from asserting a statute of limitations defense when that person, by deception or violation of a duty, has concealed material facts from the plaintiff thereby preventing discovery of a wrong. *Ferrell, supra; Spoljaric, supra; Nahmias v. Trustees of Indiana University* (1983), Ind.App., 444 N.E.2d 1204, *trans. denied.* The physician's failure to disclose that which he knows, or in the exercise of reasonable care should have known, constitutes constructive fraud. This constructive fraud terminates at the conclusion of the physician-patient relationship at which time the statute of limitations begins to run. *Ferrell, supra; Spoljaric, supra.* The statute will also commence to run after a patient learns of the malpractice, or discovers information which would lead to the discovery of the malpractice if the patient exercises reasonable diligence. *Id.* Fraudulent concealment thus tolls the running of the statute of limitations until either the physician-patient relationship is terminated or the patient discovers the malpractice or learns information which in the exercise of due diligence would lead to discovery of the malpractice. *Ferrell, supra; Spoljaric, supra; Nahmias, supra.*

Under the fraudulent concealment doctrine, however, the plaintiff does not have two full years from the discovery of the alleged malpractice in which to file a claim.

Rather, the law places upon a plaintiff the responsibility to institute an action within a reasonable time after discovery of the alleged malpractice. *Walters v. Rinker* (1988), Ind.App., 520 N.E.2d 468, *trans. denied; Ferrell, supra; Spoljaric, supra; see also Burks v. Rushmore* (1989), Ind., 534 N.E.2d 1101. Thus, although equitable grounds exist for estopping a defendant from claiming the statute of limitations as a defense, estoppel will be denied if the plaintiff fails to exercise due diligence in filing his claim after the equitable grounds cease to be operational as a valid basis for inducing the plaintiff's delay. *Ferrell, supra; Spoljaric, supra.*

We must next determine, therefore, whether under the facts in the present case Cyrus filed her claim within a reasonable time after discovering the alleged malpractice. By her own admission, Cyrus became aware of her pregnancy, and thus the failure of the tubal ligation, by August 6, 1985. Cyrus, however, did not file her proposed complaint until June 27, 1987, 22 months after the latest date she discovered the malpractice. We hold that a 22-month delay is unreasonable under the facts of this case. This holding is consistent with our recent decision in *Walters, supra.*

In *Walters*, Rinker consulted with his family physician who surgically removed a tumor from his right eye and forwarded it for examination to Walters, a pathologist with the hospital where the surgery was performed. Walters determined the tumor was not malignant and advised Rinker in August, 1983. On April 5, 1985, Rinker was diagnosed at the Mayo Clinic as having cancer. The Rinkers, however, did not file a claim until July 10, 1986. This court held that the 15-month period between the time Rinker discovered he had cancer, and thus the incorrect diagnosis of his tumor, and the date he filed his proposed complaint was an unreasonable delay. Similarly, the 22-month delay in the case at bar is unreasonable as well. Thus, the trial court properly entered summary judgment in favor of Nero on the basis that Cyrus's complaint was not timely filed.

Cyrus also contends, however, that the doctrine of continuing wrong operates to estop Nero from asserting the statute of limitations as a defense. The doctrine of continuing wrong is applicable where an entire course of conduct combines to produce an injury. *Ferrell, supra; Frady v. Hedgcock* (1986), Ind.App., 497 N.E.2d 620, *trans. denied*. When certain conduct is determined to constitute a continuing wrong, the statute of limitations is tolled so that it does not commence running until the wrongful act ceases. *Id.* We disagree, however, that there exists a continuing wrong in the case at bar.

The cases applying the continuing wrong doctrine demonstrate that the alleged injury producing conduct must be of a continuing nature. For example, *Ferrell* involved the continuing failure of the defendant doctor to diagnose the plaintiff's breast cancer. Likewise, *Frady* involved the long-term prescription of medications. In the case at bar, however, the only wrong which allegedly caused the damages complained of is the failed sterilization operation performed on April 22, 1983. This is an isolated incident, and no further action by Dr. Nero could or is alleged to have caused Cyrus to suffer damages. Thus, Cyrus's assertions under the doctrine of continuing wrong are insufficient as a matter of law. The trial court properly entered summary judgment in this cause.

Judgment affirmed.

ROBERTSON, J., dissents w/opinion.

CONOVER, J., concurs.

ROBERTSON, Judge, dissenting.

I respectfully dissent for the reason that I believe a genuine issue of material fact exists and that summary judgment is not appropriate.

The doctrines of continuing wrong and fraudulent concealment are extremely fact sensitive in my opinion. *Montgomery v. Crum* (1928), 199 Ind. 660, 161 N.E. 251 clearly held that the question of a continuing wrong is one for the jury. *Frady v.*

*Hedgcock* (1986), Ind.App., 497 N.E.2d 620, which relies upon the authority in *Montgomery,* held that summary judgment was not proper because the trial court did not liberally construe the facts in favor of the nonmoving party. I am of the opinion the same thing has occurred in this case.

I would reverse the trial court's granting of summary judgment.