Tomika JOHNSON, individually and in her capacity as guardian-conservator for Demond D. Johnson; Demond D. Johnson by next friend Tomika Johnson; and Tomika Johnson in her capacity as personal representative of the estate of Barton C. Johnson, deceased; Appellants–Plaintiffs,

v.

David SULLIVAN, M.D. et al., Appellees–Defendants.

No. 82A05–1102–MI–108.

Court of Appeals of Indiana.

July 27, 2011.

Robert R. Faulkner, Evansville, IN, Attorney for Appellant.

Michelle S. Bryant, Bamberger, Foreman, Oswald & Hahn, LLP, Evansville, IN, Attorney for Appellee.

## OPINION

BRADFORD, Judge.

Appellants–Plaintiffs Tomika Johnson, *et al.*, appeal from the trial court's entry of summary judgment in favor of Appellees–Defendants David Sullivan, M.D., *et al.* Concluding that there is a genuine issue of material fact regarding whether Johnson timely filed her proposed medical malpractice complaint, we reverse and remand for trial.

## FACTS

On December 22, 2006, Barton C. Johnson was transferred to Deaconess Hospital in Evansville. On December 22, 2006, Dr. Sullivan interpreted a CT scan that had been performed on Johnson and issued and signed a "Radiological Report" regarding Johnson's case. Appellant's App. p. 33. Although the report was labeled "FINAL REPORT[,]" the next line read "SEE AMENDED REPORT. IMPRESSIONS MAY HAVE CHANGED." Appellant's App. p. 33. On December 23, 2006, Johnson died. On December 26, 2006, Dr. Sullivan issued another "Radiological Report" regarding Johnson's CT scan, this time with a second page subtitled "APPENDED REPORT[.]" Appellant's App. pp. 90–91. The first page is essentially identical to the one-page report issued on December 22, 2006. In the second report, Dr. Sullivan indicated on the second page that the "case was reviewed in retrospect after further clinical information had come to light" but does not indicate when this review occurred or that any decisions regarding Johnson's treatment resulted from the review before he died. Appellant's App. p. 91.

In a proposed medical malpractice complaint postmarked December 23, 2008, and file-stamped with that date by the Indiana Department of Insurance, Tomika Johnson, individually and in other capacities, named Deaconess Hospital, Dr. Sullivan, and Jose Arias, M.D., as defendants. On July 20, 2010, Dr. Sullivan invoked the jurisdiction of the trial court by filing a summary judgment motion, alleging that Tomika had failed to file the proposed complaint within the two-year statute of limitations period. On January 25, 2011, Tomika filed a response, alleging that there were genuine issues of material fact concerning whether (1) Dr. Sullivan had been involved in Johnson's case after December 22, 2006, (2) the doctrine of "continuing wrong" precluded entry of summary judgment, (3) Dr. Sullivan fraudulently concealed an otherwise valid claim from Tomika, and (4) the proposed

complaint was actually filed December 22, 2006, postmark date of December 23 notwithstanding. On February 4, 2011, the trial court granted summary judgment to Dr. Sullivan.

## DISCUSSION AND DECISION

### Standard of Review

When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.,* 741 N.E.2d 383, 386 (Ind.Ct. App.2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.;* Ind. Trial Rule 56. All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id.*

### I. Timely Filing of the Proposed Complaint

■ The proposed complaint is file-stamped December 23, 2008, and the envelope in which it was mailed is postmarked with that date. Tomika, however, contends that there is a genuine issue of material fact regarding whether the complaint was actually filed the day before, which, if true, would mean that it was timely. Tomika designated, *inter alia,* an affidavit from Amanda Kifer, legal assistant to Tomika's attorney, in which she

averred that she deposited the proposed complaint at the post office on December 22, 2008.

■ Under the Medical Malpractice Act, the date of delivery or *mailing,* not the date of postmarking, is the date a proposed complaint is considered filed. "A proposed complaint under IC 34–18–8 is considered filed when a copy of the proposed complaint is delivered or mailed by registered or certified mail to the commissioner." Ind.Code § 34–18–7–3(b) (2006). "A letter, package, or other mailable matter is 'mailed' when it is properly addressed, stamped with the proper postage, and deposited in a proper place for receipt of mail." BLACK'S LAW DICTIONARY 952 (6th ed.1990). In short, Kifer averred that all of the above was done on December 22, 2008, which, if true, would render the filing timely. While it may be that a postmark indicates the date on which an item was mailed in the vast majority of cases, there is no indication in the record that this is always so. We hold today that evidence of mailing on a particular date, even if it contradicts a postmark, is competent to prove filing on that date for purposes of the Medical Malpractice Act. Consequently, such evidence may generate a genuine issue of material fact regarding whether the proposed complaint was filed on December 22, 2008, or December 23, 2008.

### II. Whether Dr. Sullivan Treated Johnson After December 22, 2006

■ Tomika also contends that there is a genuine issue of material fact regarding whether Dr. Sullivan continued to treat, or in other words, provide health care to Johnson after December 22, 2006. "'Health care' means an act or treatment performed or furnished, or that should have been performed or furnished, by a

health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Ind.Code § 34–18–2–13 (2006). Dr. Sullivan averred in a designated affidavit that he "provided no medical care or services to Barton C. Johnson other than [his] interpretation of the CT head scan on December 22, 2006." Appellant's App. p. 32. Tomika contends that Dr. Sullivan's radiological report, which was appended three days after Johnson's death, contradicts his affidavit because it shows his continued involvement in Johnson's case. "Involvement," however, does not necessarily mean providing health care. There is no designated evidence that Dr. Sullivan did anything to or for Johnson or on his behalf after December 22, 2006. Moreover, even if we were to assume that reviewing and updating a report constitutes health care, there is no indication that that occurred prior to Johnson's death on December 23. The designated evidence does not generate a genuine issue of material fact that Dr. Sullivan provided health care to Johnson after December 22, 2006.

## III. The Continuing Wrong Doctrine

■■■ Tomika contends that the doctrine of continuing wrong also served to prevent the statute of limitations from beginning to run until at least December 23, 2006.

> The doctrine of continuing wrong is applicable where an entire course of conduct combines to produce an injury. *See Cyrus v. Nero*, 546 N.E.2d 328, 331 (Ind.Ct.App.1989). The doctrine of continuing wrong is not an equitable doctrine; rather, it defines when an act, omission, or neglect took place. *Havens v. Ritchey*, 582 N.E.2d 792, 795 (Ind. 1991). When this doctrine attaches, the statute of limitations does not begin to run until the wrongful act ceases, and at that point the plaintiff may bring the claim within the normal statutory period. *See Cyrus*, 546 N.E.2d at 331.

> *Boggs v. Tri–State Radiology, Inc.*, 730 N.E.2d 692, 699 (Ind.2000).

As previously mentioned, Tomika has designated no evidence indicating that Dr. Sullivan provided any health care to Johnson after he interpreted the CT scan on December 22, 2006. We have noted, however, that "[t]he cases applying the continuing wrong doctrine demonstrate that the alleged injury producing conduct must be of a continuing nature." *Cyrus*, 546 N.E.2d at 331. There is no designated evidence that Dr. Sullivan's treatment of Johnson was anything other than an isolated event, and, therefore, the facts of this case cannot support the application of the continuing wrong doctrine. *See id.* (concluding that continuing wrong doctrine did not apply where only treatment at issue was sterilization procedure).

## IV. Fraudulent Concealment

■■■ Finally, Tomika contends that there is a genuine issue of material fact that the doctrine of fraudulent concealment applies, which she claims would toll the statute of limitations until the discovery of the concealment, allegedly a period of four days, the amount of time that passed between the issuances of Dr. Sullivan's original radiology report and the amended report.

> The doctrine of fraudulent concealment operates to estop a defendant from asserting a statute of limitations defense when that person, by deception or a violation of a duty, has concealed material facts from the plaintiff thereby preventing discovery of a wrong. Thus, equitable estoppel can arise either from active efforts to conceal the malpractice or from failure to disclose material information when a fiduciary or confidential relationship exists between the physician

and patient. The physician's failure to disclose that which he knows, or in the exercise of reasonable care should have known, constitutes constructive fraud. *Hughes v. Glaese*, 659 N.E.2d 516, 519 (Ind.1995) (citation omitted). Here, Tomika seems to allege that Dr. Sullivan's concealment was active, rather than the constructive concealment of failure to disclose material information.[1] "Regardless whether the fraudulent concealment is active or constructive, a plaintiff must institute an action within a reasonable time after a patient learns of the malpractice, or discovers information which would lead to the discovery of malpractice if the patient exercises reasonable diligence." *Id.* (citation and quotation marks omitted). "[W]hen the concealment is active, the duty of diligence does not commence until such actual or reasonably possible discovery." *Id.*

There is no designated evidence in the record regarding when Tomika might have discovered what she now claims was medical malpractice or the active concealment of that alleged malpractice. As such, we are in no position to evaluate whether Tomika's action was commenced within a reasonable time of the discovery of the concealment. Tomika has failed to establish that a genuine issue of material facts exists with regard to fraudulent concealment.

## Conclusion

The designated evidence indicates that a genuine issue of material fact exists regarding whether Tomika's proposed complaint was timely filed and we therefore reverse the trial court's grant of summary judgment on that ground. We further find that no genuine issues of material fact exist with regard to Tomika's claims that Dr. Sullivan provided health care to Johnson after December 22, 2006, that the continuing wrong doctrine applies, or that the doctrine of fraudulent concealment applies and affirm the trial court's grant of summary judgment on those grounds.

We affirm in part, reverse in part, and remand for proceedings not inconsistent with this opinion.

BAKER, J., concurs with opinion.

RILEY, J., concurs.

BAKER, Judge, concurring with opinion.

While I fully concur with the majority, I write separately to suggest that the issue of whether the complaint was timely mailed might be tried first. Only if the answer is in the affirmative, should the parties undertake the expense of conducting discovery and presenting their proof of

---

1. Contrary to Tomika's contention and some language in the cases suggesting that it does, fraudulent concealment does not serve to toll the two-year medical malpractice statute of limitations, at least not in the sense that it "stops the clock." *See, e.g., Boggs v. Tri–State Radiology Inc.*, 730 N.E.2d 692, 698 (Ind. 2000) ("If the concealment is constructive, in this case by reason of an ongoing duty arising from the continuing physician-patient relationship, the statute of limitations is tolled until the termination of the physician-patient relationship, or, as in the active concealment case, until discovery, whichever is earlier."). In practice, though, no claimant in any Indiana case of which we are aware has ever

been given a full two years following discovery of concealment in which to file suit. In *Boggs*, as in every other case we have found where fraudulent concealment has been found to apply, the claimant has been given a "reasonable period of time" in which to file a claim. *Id.; see also Schriber v. Anonymous*, 848 N.E.2d 1061, 1064 (Ind.2006) ("[W]e conclude that a more appropriate alternative would be to judicially toll the expiration of the limitation period under the Act, so as to provide the plaintiff with a *reasonable time after discovery* of the proper entity name within which to commence an action in accordance with the Act.") (emphasis added).

the remaining issues. Trial Rule 42(C) specifically authorizes this procedure, and utilizing it in these circumstances would potentially save both public and private resources.