John A. O'NEAL, Appellant–Plaintiff

v.

Frank B. THROOP, M.D. and Rehab Works d/b/a Heartland Rehabilitation, Inc., Appellee–Defendants.

No. 49A02–9203–CV–116.[1]

Court of Appeals of Indiana,
First District.

July 30, 1992.

Transfer Denied Oct. 26, 1992.

---

**1.** This case diverted by direction of the Chief Judge on 7/7/92.

Stephen L. Williams, Mann, Chaney, Johnson, Goodwin & Williams, Terre Haute, for John A. O'Neal.

Nancy Menard Riddle, Ice, Miller, Donadio & Ryan, Indianapolis, for Rehab Works d/b/a Heartland Rehabilitation, Inc.

Steven J. Cohen, Tipton, Cohen & Koch, Indianapolis, for Frank B. Throop, M.D.

BAKER, Judge.

Plaintiff-appellant John A. O'Neal appeals the trial court's granting of summary judgment in favor of defendant-appellees Frank B. Throop, M.D. (Dr. Throop) and Rehab Works, d/b/a Heartland Rehabilitation, Inc. (Rehab Works). O'Neal raises three issues for our review, which we restate as:

I. Whether the trial court properly found that O'Neal's medical malpractice complaint was time barred because O'Neal filed the complaint more than two years after he received the medical treatment about which he complained.

II. Whether the trial court properly found the statute of limitations on O'Neal's claim was not tolled under the doctrine of continuing wrong.

III. Whether the trial court properly found the doctrine of fraudulent concealment did not estop the health care providers from asserting the statute of limitations defense.

We affirm.

## FACTS

The facts in this case are not in dispute. On June 22, 1988, O'Neal sought medical treatment from Dr. Throop for a knee injury he suffered two days earlier playing softball. Dr. Throop performed an arthroscopic examination of O'Neal's knee and concluded O'Neal had a torn medial collateral ligament. On June 30, 1988, Dr. Throop reattached the torn ligament to the bone with a metallic staple. To help O'Neal regain full use of his knee, Dr. Throop prescribed post-operative physical therapy three times a week for three weeks. O'Neal began the therapy at Rehab Works on July 19, 1988. Although his progress was slow, O'Neal continued therapy at Rehab Works through August 19, 1988. Dr. Throop saw O'Neal again on August 22, 1988, and prescribed a new course of physical therapy at Indianapolis Physical Therapy and Sports Medicine, not a party to this action. O'Neal participated in that therapy from August 24, 1988, until September 7, 1988.

On September 7, 1988, Dr. Throop again examined O'Neal's knee and concluded the staple had come loose. He recommended O'Neal undergo additional surgery to remove the loose staple, and have closed manipulation of his knee to increase flexion. The next day, September 8, 1988, O'Neal sought treatment from another orthopedic surgeon, Dr. Joseph Randolph. At that time, Dr. Randolph purportedly told O'Neal that Dr. Throop had attached the staple improperly. On September 14, 1988, Dr. Randolph removed the staple from O'Neal's knee. O'Neal never sought treatment again from Dr. Throop after his consultation and examination on September 7, 1988.

On September 13, 1990, O'Neal filed a proposed complaint with the Indiana Department of Insurance against Dr. Throop and Rehab Works. On the same day, he also filed a complaint in the Marion Superior Court. Dr. Throop and Rehab Works filed motions for summary judgment alleging O'Neal's actions were time-barred. After a hearing, the trial court granted the defendants' motions and dismissed O'Neal's complaints. O'Neal appeals the dismissals.

## DISCUSSION AND DECISION

### Summary Judgment: Standard of Review

■ In reviewing the propriety of the grant of summary judgment, this court applies the same standard as the trial court. *Hospital Corp. of America v. Hiland* (1989), Ind.App., 547 N.E.2d 869, 872, *adopted by, Cacdac v. Hiland* (1990), Ind., 561 N.E.2d 758. Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.;* Ind. Trial Rule 56(C). When the parties do not dispute the facts material to the claim, our task is to determine whether the trial court correctly applied the law to the undisputed facts. *State ex rel. Indiana State Bd. of Dental Examiners v. Judd* (1990), Ind.App., 554 N.E.2d 829, 830. This court will affirm a summary judgment based on any legal theory which is consistent with the facts disclosed in the record. *Hupp v. Hill* (1991), Ind.App., 576 N.E.2d 1320, 1323.

## I

### Two–Year Statute of Limitations

The trial court found that Dr. Throop and Rehab Works were entitled to relief as a matter of law because O'Neal's actions were barred by the statute of limitations.

■ IND.CODE 16–9.5–3–1 of the Indiana Medical Malpractice Act provides, in relevant part:

(a) No claim, whether in contract or tort, may be brought against a health care provider based upon professional service of health care rendered or that should have been rendered unless filed within two (2) years from the date of the alleged act, omission or neglect....

This provision has repeatedly been held to be an "occurrence" rather than a "discovery" statute. *See Havens v. Ritchey* (1991), Ind., 582 N.E.2d 792, 794; *Babcock v. Lafayette Home Hospital* (1992), Ind. App., 587 N.E.2d 1320, 1323; *Hospital Corp. of America, supra.* Thus, an action for medical malpractice must be filed within two years of when the alleged negligent act or omission occurred rather than from the date it was discovered.[2] *Id.*

---

**2.** Notwithstanding the court's sweeping ruling in *Wehling v. Citizens Nat. Bank* (1992), Ind., 586 N.E.2d 840, in which our supreme court held that a merged discovery and ascertainment rule applies in all tort claims, the occurrence rule continues to apply in medical malpractice claims. As Chief Justice Shepard explained in *Havens, supra,* medical malpractice claims are treated differently than other tort actions, and "[t]he Indiana General Assembly has enacted a statute of limitation for medical malpractice actions which varies from the standard statute of limitation applicable generally to tort suits." *Id.* at 794. The statute Chief Justice Shepard referred to, IND.CODE 16–9.5–3–1, provides a two-year statute of limitation that begins to run from the date of the occurrence.

Even if the discovery and ascertainment rules were to apply in medical malpractice claims, however, O'Neal's claim would still be barred. By his own admission, O'Neal learned on Sep-

■ It is undisputed that pursuant to Dr. Throop's prescription, Rehab Works provided physical therapy to O'Neal from July 19, 1988, through August 19, 1988. Rehab Works prepared O'Neal's discharge summary on August 23, 1988, and O'Neal began receiving physical therapy from another group on August 24, 1988. O'Neal now alleges that Rehab Works negligently failed to inform Dr. Throop that O'Neal was making little progress in his physical therapy; however, O'Neal did not file his proposed complaint with the Indiana Department of Insurance against Rehab Works until September 13, 1990. Because the proposed complaint was not filed within the two-year time period established by IND.CODE 16–9.5–3–1, the complaint was not timely filed. The trial court properly granted Rehab Works's motion for summary judgment.

### Dr. Throop

O'Neal also brought a medical malpractice claim against Dr. Throop, in which he alleged Dr. Throop improperly placed the staple in his knee during surgery on June 30, 1988, rendered inadequate post-operative care by placing his knee in a straight leg brace for 21 days following the surgery, and failed to prescribe proper physical therapy. All of the above conduct occurred while O'Neal was under Dr. Throop's care from June 30, 1988, until September 7, 1988.

O'Neal filed his proposed complaint with the Indiana Department of Insurance against Dr. Throop on September 13, 1990, which was more than two years after the alleged occurrences of medical malpractice occurred. O'Neal's complaint was therefore barred by IND.CODE 16–9.5–3–1. Because there was no issue of material fact and Dr. Throop was entitled to judgment as a matter of law, the trial court properly granted him summary relief.

tember 8, 1988, that Dr. Throop placed the staple in his knee improperly. If O'Neal's discovery triggered the statute of limitations to run on his claim, then O'Neal had until September

## II

### Doctrine of Continuing Wrong

■ To escape the statute of limitations bar, O'Neal argues that Dr. Throop's and Rehab Works's negligent medical care was a continuing wrong. As a continuing wrong, he asserts the statute of limitations did not begin to run on his claims until the conduct ceased.

■ The doctrine of continuing wrong is applicable when an entire course of conduct combines to produce an injury. *Hospital Corp. of America, supra.* Under the doctrine, the two-year statute of limitations does not begin to run until the wrongful course of conduct ceases. In this case, O'Neal alleges Dr. Throop provided negligent medical treatment for O'Neal's knee, and Rehab Works negligently failed to inform Dr. Throop that O'Neal was making little progress in physical therapy. O'Neal asserts these actions constituted a continuing wrong. Even if he were correct, his claims are still time barred.

The evidence is unrefuted that on September 7, 1988, Dr. Throop informed O'Neal that the staple was loose and needed to be removed. Instead of making an appointment for the procedure, however, O'Neal sought treatment from another orthopedic surgeon, Dr. Randolph. On September 8, 1988, Dr. Randolph reported to O'Neal that he agreed the staple needed to be removed. On September 14, 1988, Dr. Randolph removed the staple and manipulated O'Neal's knee.

O'Neal argues Dr. Throop's and Rehab Works's wrongful conduct did not cease until September 14, 1988, when Dr. Randolph removed the improperly placed staple. We disagree. If Dr. Throop's and Rehab Works's alleged injury-producing conduct was, in fact, a continuing wrong, the wrong ceased on September 7, 1988, when Dr. Throop informed O'Neal about the loose staple and recommended its removal, or, at the latest, on September 8,

8, 1990, to file his claim. Because he did not file his claim until September 13, 1990, his claim is barred.

1990, when Dr. Randolph told O'Neal the staple had been attached improperly. Under the doctrine of continuing wrong, therefore, O'Neal had until September 8, 1990, to file his proposed complaint. He did not make his filing until September 13, 1990. Even under the doctrine of continuing wrong, therefore, O'Neal's complaint was time barred.

## III

*Doctrine of Fraudulent Concealment*

█ Finally, O'Neal argues the health care providers are estopped from asserting the statute of limitations defense due to the doctrine of fraudulent concealment. Again, we disagree.

█ The doctrine of fraudulent concealment estops a defendant from asserting a statute of limitations defense when that person, by deception or violation of a duty, conceals material facts from the plaintiff to prevent discovery of the wrong. *Babcock, supra,* at 1323; *Hospital Corp. of America, supra,* at 873. Estoppel can arise when the physician actively conceals the malpractice or fails to disclose material information when the physician is in a fiduciary or confidential relationship with the patient. *Id.* When the physician-patient relationship terminates, the constructive fraud terminates and the statute of limitations begins to run. *Id.* The statute of limitations also begins to run when the patient learns of the malpractice or discovers information that would lead to discovery of the malpractice with the exercise of reasonable diligence. *Id.*

█ The two-year statute of limitations does not apply under the doctrine of fraudulent concealment, however. *Id.* Instead, a plaintiff claiming fraudulent concealment has a duty to bring the action within a reasonable time after discovering the malpractice. *Id.* Once the plaintiff discovers the malpractice, the physician's fraudulent concealment is no longer a valid basis for delay, so the plaintiff must exercise due diligence in bringing the malpractice claim. *Id; see also Babcock, supra* (plaintiff's delay unreasonable when complaint filed one year after learning doctor might have left sponge in body cavity during hysterectomy, and three years after the procedure occurred); *Hospital Corp. of America, supra* (22-month delay between discovery that physician performed unnecessary surgery and filing claim held unreasonable); *Cyrus v. Nero* (1989), Ind.App., 546 N.E.2d 328 (22-month delay after plaintiff discovered her pregnancy, and thus the failure of a sterilization procedure, held unreasonable).

Even if Dr. Troop fraudulently concealed his malpractice in this case, the trial court properly found O'Neal was not diligent in filing his claim. On September 7, 1988, Dr. Throop told O'Neal the staple was loose and needed to be removed. Armed with this information, O'Neal diligently sought treatment from another orthopedic surgeon, and, in the process, discovered the alleged malpractice. This all occurred by September 8, 1988. O'Neal failed to file his proposed complaint until September 13, 1990, however, which was more than two years after O'Neal learned Dr. Throop may have attached the staple improperly. As a matter of law, this delay was unreasonable. *See Babcock, supra.*

Likewise, the physician-patient relationship between Rehab Works and O'Neal terminated, at the latest, on August 23, 1988, the date his discharge summary was prepared. On August 24, 1988, O'Neal began physical therapy with another group. O'Neal did not file his claim against Rehab Works, however, until September 13, 1990, more than 24 months after the relationship terminated. As a matter of law, this delay was unreasonable.

The trial court properly entered summary judgment in favor of Dr. Throop and Rehab Works on the basis that O'Neal's proposed complaints were not filed timely.

The judgment is in all things affirmed.

RATLIFF, C.J., and ROBERTSON, J., concur.