MOORE, Appellant,

v.

BURT; St. Elizabeth Medical Center, Appellee.*

[Cite as *Moore v. Burt* (1994), 96 Ohio App.3d 520.]

Court of Appeals of Ohio,
Montgomery County.

No. 13097.

Decided Aug. 3, 1994.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 71 Ohio St.3d 1444, 644 N.E.2d 406.

*Marylee Gill Sambol,* for appellant.

*Frank C. Woodside* and *K.C. Green,* for appellee.

BROGAN, Judge.

Appellant Ruby Moore appeals the decision of the Montgomery County Common Pleas Court sustaining a summary judgment motion against her.

Moore advances four assignments of error. First, she contends the trial court erred by declaring her claims against St. Elizabeth Medical Center ("SEMC") time-barred by the one-year statute of limitations set forth in R.C. 2305.11. Second, she asserts the trial court erred by finding her claims against SEMC time-barred under R.C. 2305.10. Third, she argues the trial court erred by ruling that R.C. 2305.25 provides a hospital with immunity for negligent peer review.

Finally, Moore contends the trial court erred by dismissing her fraudulent concealment claim against SEMC.

Moore's lawsuit stems from surgery performed by Dr. James C. Burt, then a physician with staff privileges at SEMC. Moore consulted Burt in 1976 and explained that she was experiencing urinary incontinence. She underwent a bladder suspension and vaginal reconstruction surgery the following year. Moore returned to SEMC throughout 1978 for resuturing because her incisions failed to heal properly.

In the following years, Moore developed a variety of ailments, including recurring kidney infections, bowel problems, worsened incontinence, backaches, and depression. Dissatisfied with her physical condition, Moore confronted Burt, who told her she had "inferior tissue" and that her problems would improve.

Still suffering, however, Moore contacted an attorney around 1980 and considered suing Burt. She also approached the Montgomery County Medical Society and inquired about any complaints on file concerning the doctor. Moore was "given the impression" that no complaints had been registered. She subsequently decided not to pursue legal action.

In October 1988, Moore viewed the "West 57th Street" television program regarding Burt's surgical practices and wondered whether Burt had performed his "love surgery" upon her. The following month, she also read a newspaper article recounting the doctor's unorthodox surgery.

Upon receiving this information, Moore consulted Dr. Bradley Busacco. The doctor conducted an examination and opined that Burt's surgeries caused Moore's physical problems. Consequently, Moore filed a complaint in April 1989, alleging, in relevant part, that SEMC negligently selected and retained Burt, negligently performed peer review, and fraudulently concealed its knowledge of Burt's surgery.

SEMC filed an answer asserting, *inter alia,* a statute of limitations defense. The medical center later moved for summary judgment, contending that Moore's action was time-barred by both R.C. 2305.11(B)(1), which provides a one-year statute of limitations for medical claims, and R.C. 2305.10, which provides a two-year statute of limitations for bodily injury actions. SEMC also claimed immunity from liability pursuant to R.C. 2305.25.

The trial court subsequently granted SEMC's summary judgment motion in this case and eighteen other consolidated cases involving former Burt patients. The court found the patients' claims time-barred under both statutes of limitations and found SEMC immune from liability under R.C. 2305.25. The court also rejected the fraudulent concealment allegations, concluding that no "special relationship" required SEMC to disclose information to Burt's patients.

Moore then filed a notice of appeal, which this court ordered held in abeyance pending the Ohio Supreme Court's decision in *Browning v. Burt* (1993), 66 Ohio St.3d 544, 613 N.E.2d 993. Following the Supreme Court's resolution of *Browning,* we vacated the stay and ordered the present appeal to proceed to determination.

■ We begin our resolution of Moore's assignments of error with a brief review of *Browning,* which involved lawsuits brought against SEMC by two former Burt patients, Jimmy Dean Browning and Coney Mitchell. The women sought recovery from SEMC for negligently granting and continuing the staff privileges of Burt and Dr. Blue, another physician with SEMC staff credentials. In its defense, SEMC relied primarily upon *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 538 N.E.2d 93. In *Allenius,* the Ohio Supreme Court held that a medical malpractice claim accrues under R.C. 2305.11 when a "cognizable event" leads the patient to believe his condition is "related to a medical procedure, treatment or diagnosis previously rendered to the patient and where the cognizable event does or should place the patient on notice of the need to pursue his possible remedies." *Id.* at syllabus.

However, the *Browning* court rejected SEMC's argument that the negligent credentialing claims were time-barred as medical claims under R.C. 2305.11. In fact, the court concluded that negligent credentialing claims are not "medical claims" as defined in R.C. 2305.11(D)(3). *Id.,* 66 Ohio St.3d at 556, 613 N.E.2d at 1003. Therefore, they fall outside the scope of R.C. 2305.11 and its one-year statute of limitations. *Id.* Moreover, the court refused to apply the *Allenius* "cognizable event" medical malpractice test to negligent credentialing actions. *Id.* at 559–560, 613 N.E.2d at 1004–1006.

Instead, the *Browning* court held that a negligent credentialing cause of action is a claim arising out of a hospital's independent duty to the patient. This duty involves granting and continuing staff privileges only for competent physicians. *Id.* at 557, 613 N.E.2d at 1003–1004. Because this duty does not involve medical care or treatment, it is governed by the two-year statute of limitations found in R.C. 2305.10. *Id.* at 558, 613 N.E.2d at 1004.

The court then tailored a discovery rule applicable to R.C. 2305.10 for bodily injury actions arising from a hospital's negligent credentialing. Specifically, the court held that "a cause of action for negligent credentialing arises when the plaintiff knows or should know that he or she was injured as a result of the hospital's negligent credentialing procedures or practices." *Id.* at 560, 613 N.E.2d at 1006.

Furthermore, the *Browning* court noted:

"It is sufficient if a plaintiff discovers or, through the exercise of reasonable diligence, should have discovered some definitive information that would reasonably warrant investigation of the hospital's credentialing practices. Such an occurrence might be termed an 'alerting event,' if for no other reason than to contrast the occurrence triggering the commencement of the statute of limitations for negligence in R.C. 2305.10 from the 'cognizable event' of the R.C. 2305.11 limitation period. However, discovery of a physician's medical malpractice does not, in itself, constitute an 'alerting event' nor does such discovery implicate the hospital's credentialing practices or require investigation of the hospital in this regard."

In her first assignment of error, Moore contends the trial court erred by declaring her claims time-barred under the one-year statute of limitations found in R.C. 2305.11. In light of the Ohio Supreme Court's *Browning* decision, we agree and sustain this assignment of error. We find applicable the two-year limitations period found in R.C. 2305.10.

In opposition to this determination, SEMC raises a number of arguments, each asserting that *Browning* may not be applied to the present appeal. In essence, SEMC alleges that the "alerting event" test is vague and unworkable, thereby precluding any hospital from maintaining a meaningful statute of limitations defense. Furthermore, SEMC claims that our application of *Browning* would constitute a retroactive statute of limitations change. For both reasons, SEMC contends that application of *Browning* would violate due process.

We reject both arguments. This court cannot declare the "alerting event" test articulated last year by the Ohio Supreme Court a violation of constitutional due process. We are not prepared, as SEMC suggests, to find *Browning* a facial violation of the Fourteenth Amendment.

Moreover, it is evident that the Ohio Supreme Court intended *Browning* to apply to the multitude of cases pending against Burt and SEMC. Indeed, the *Browning* court recognized that "[t]he two cases before us today are representative of many actions filed in Montgomery County relating to the drastically unconventional surgical practices of Dr. James C. Burt during his former service at St. Elizabeth Medical Center ("SEMC") in Dayton." *Browning, supra,* at 545, 613 N.E.2d at 996.

The *Browning* court also noted that "[p]erhaps [the appellants], and others, will have their day in court, where the conspiracy of silence in the local medical community which permitted the atrocities to be committed and the atrocities themselves, can be more fully explored." *Id.* at 565, 613 N.E.2d at 1009. We believe these statements express the court's desire that *Browning* be applied in all negligent credentialing claims against SEMC. See, also, *Peerless Electric Co. v. Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 129 N.E.2d 467, 468 ("A

decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law.")

SEMC also raises an equal protection challenge, contending that the *Browning* discovery rule irrationally treats hospitals differently from all other tort defendants. Specifically, SEMC asserts that under *Browning* a plaintiff must discover her injury and the hospital's particular negligence before the statute of limitations begins to run. In all other cases, SEMC claims, a plaintiff must only discover the injury for a cause of action to accrue.

Once again, we find SEMC's argument unpersuasive. This court cannot declare the discovery rule articulated last year by the Ohio Supreme Court a violation of the Equal Protection Clause. Such a determination is properly left to the United States Supreme Court.

In her second assignment of error, Moore contends the trial court erred by finding her claims time-barred under the two-year statute of limitations set forth in R.C. 2305.10.

Guided by our appellate decision in *Browning,* the trial court held that Moore's cause of action against SEMC expired one year after accrual. The trial court noted, however, that it believed the claim also failed under the two-year limitations period set forth in R.C. 2305.10 and subsequently adopted for negligent credentialing actions by the Ohio Supreme Court in *Browning.*

█ We disagree with this conclusion. Under *Browning*'s "alerting event" discovery rule, the two-year statute of limitations begins to run when the victim knows or should have discovered that she was injured as a result of the hospital's negligent credentialing. This test requires the occurrence of two events before a cause of action accrues. First, the victim must suffer an injury. Second, the victim must have knowledge that the injury resulted from a hospital's credentialing practices.

█ Moore claims viewing the "West 57th Street" program in October 1988 first alerted her that her injuries stemmed from SEMC's negligent credentialing of Burt. Accordingly, Moore filed her complaint on April 10, 1989, well within the two-year limitations period set forth in R.C. 2305.10.

In addition, Moore asserts that SEMC failed during her deposition to inquire about what prompted her to commence an action against the medical center. Consequently, Moore claims SEMC has failed to produce any evidence demonstrating that she filed her claim more than two years after her cause of action accrued.

Conversely, SEMC contends that an "alerting event" occurred much earlier. specifically, SEMC claims Moore was on actual notice to investigate its credentialing practices at latest by 1981 when she contacted an attorney regarding a possible lawsuit against Burt. In addition, SEMC cites Moore's inquiry at the Montgomery County Medical Society as a further indication that she was on actual notice to investigate potential claims against SEMC.

SEMC also asserts that Moore was on constructive notice to investigate potential remedies against the medical center at latest in 1978. SEMC stresses that under *Browning* an "alerting event" involves knowledge that the patient's doctor "may have committed a number of harmful, improper or unwarranted surgeries * * *." *Browning, supra,* 66 Ohio St.3d at 561, 613 N.E.2d at 1006. In the present case, SEMC contends Moore was aware of multiple such surgeries by late 1978 and that this knowledge, coupled with her post-surgical problems, constituted an "alerting event" and triggered the two-year statute of limitations.

Viewing the evidence in a light most favorable to Moore, we reject SEMC's arguments. Moore claims in an affidavit that she did not link her health problems with Burt's surgery until viewing "West 57th Street" and being examined by Dr. Busacco. In a deposition given in another case, however, Moore states that she believed Burt's surgery caused her health problems when she consulted an attorney around 1980 and considered a malpractice action against the doctor.

Given Moore's deposition statement, her consultation with an attorney concerning potential legal action against Burt, and her inquiry at the medical society, Moore knew or should have known around 1980 that Burt's surgery caused her ailments. Thus, Moore had knowledge of an injury and fulfilled the first requirement of the *Browning* discovery rule.

However, *Browning* also requires a victim to have knowledge that her injury resulted from the hospital's negligent credentialing practices. We cannot agree with SEMC's contention that, as a matter of law, Moore's inquiry at the medical society and her knowledge that Burt performed numerous questionable procedures upon her fulfills *Browning*'s requirement.

Our analysis focuses upon the medical society's *response* to Moore's inquiry and not the inquiry itself. In the deposition cited above, Moore states that the society gave her the impression that no complaints had been registered against Burt.

Thus, while her discussion with an attorney and inquiry with the medical society constitute strong evidence that Moore suspected Burt's malpractice, the record reveals nothing reasonably prompting her to question SEMC's credentialing procedures. It is well settled that "discovery of a physician's medical

malpractice does not, in itself, constitute an 'alerting event' nor does such discovery implicate the hospital's credentialing practices or require investigation of the hospital in this regard." *Browning, supra,* at 561, 613 N.E.2d at 1006.

Furthermore, we do not believe that Moore had constructive notice in 1978 to investigate a possible negligent credentialing action. Moore's recurring health problems would have only prompted an inquiry into a potential malpractice claim against Burt. In support of its position, however, SEMC cites *Browning* and stresses that a patient's knowledge that her doctor "may have committed a number of harmful, improper or unwarranted surgeries * * *" constitutes an "alerting event." The passage quoted, however, refers to "harmful, improper or unwarranted surgeries" performed *"upon a number of unsuspecting patients* such that SEMC's credentialing practices could reasonably be brought into question."* (Emphasis added.) *Browning, supra,* at 561, 613 N.E.2d at 1006.

In the present case, Moore knew only that Burt repeatedly had performed surgery upon her. Nothing in the record suggests that Moore knew or should have known prior to 1988 that other women were subjected to improper surgery. Consequently, we reject SEMC's arguments and sustain Moore's second assignment of error.

In her third assignment of error, Moore claims the trial court erred by finding SEMC immune from liability pursuant to R.C. 2305.25, which provides, in relevant part:

"No hospital, no state or local society, and no individual who is a member or employee of any of the following committees shall be liable in damages to any person for acts, omissions, decisions, or other conduct within the scope of the functions of the committee:

" * * *

"(E) A peer review committee, professional standards review committee, or arbitration committee of a state or local society composed of doctors of medicine, doctors of osteopathic medicine and surgery, doctors of dentistry, doctors of optometry, doctors of podiatric medicine, psychologists, or registered pharmacists[.]"

In *Browning,* the Ohio Supreme Court held that "R.C. 2305.25 does not provide a hospital with immunity from liability for the hospital's negligence in granting and/or continuing the staff privileges of an incompetent physician." *Browning, supra,* 66 Ohio St.3d at 563, 613 N.E.2d at 1007. The Supreme Court stressed that the statute's purpose is limited to protecting those who serve on review boards and those who provide information to review boards. *Id.* at 562, 613 N.E.2d at 1006–1007.

SEMC asserts, however, that the *Browning* court's statement regarding statutory immunity is "arguably dictum." In support of this position, SEMC notes that the *Browning* court limited its immunity ruling to the facts of that case. SEMC also stresses that the immunity issue was neither briefed nor argued in *Browning*. For these reasons, SEMC urges this court to find statutory immunity or, alternatively, to apply *Browning* prospectively.

We are prepared to do neither. The facts of the present appeal are strikingly similar to those in *Browning*. Moreover, in both cases SEMC neither participated on a review board nor provided information to a review board. Consequently, we find the court's pronouncement in *Browning* applicable.

■ Finally, SEMC argues that the lack of statutory immunity violates due process. Specifically, the medical center contends that *Browning* creates an untenable conflict between R.C. 2305.25 and 2305.251, which provides in part:

"Proceedings and records of all review committees described in section 2305.25 of the Revised Code shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care professional, [or] a hospital * * *. No person in attendance at a meeting of a review committee or serving as a member of a review committee shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of the committee or as to any finding, recommendation, evaluation, opinion, or other action of the committee or member thereof."

SEMC argues that R.C. 2305.251 places it in the impossible position of trying to defend against claims without being able to offer any evidence regarding what it knew or what procedures it followed. Consequently, SEMC contends *Browning*'s statement regarding immunity "revives the inherent conflict in Ohio's peer review laws" and violates due process.

In *Browning* the court dispensed with essentially this same argument by citing the following portion of R.C. 2305.251:

" ' * * * Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented during proceedings of a committee nor should any person testifying before a committee or who is a member of the committee be prevented from testifying as to matters within his knowledge, *but the witness cannot be asked about his testimony before the committee or opinion formed by him as a result of the committee hearing.'* " *(Emphasis added.)* *Browning, supra,* at 562–563, 613 N.E.2d at 1007.

We find this language equally applicable to the present appeal and sustain Moore's third assignment of error.[1]

In her fourth assignment of error, Moore asserts that the trial court erred in dismissing her fraudulent concealment claim against SEMC. Specifically, she contends that a "special relationship" exists between a hospital and its patients and that, as a result of this relationship, SEMC had a duty to warn her about Burt's unorthodox surgery. Alternatively, she claims that, absent a "special relationship," SEMC still had a duty to disclose the true nature of Burt's surgery.

In response, SEMC contends that Moore's fraudulent concealment claim was not properly before the trial court. Moore filed for leave to amend her complaint on January 19, 1990. That same day, she also filed the amended complaint, which included a fraud allegation. SEMC asserts the trial court never ruled upon Moore's motion, however. As a result, the medical center claims the fraudulent concealment issue was not properly pending before the trial court.

We disagree. Civ.R. 15(B) provides that when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated as if they had been raised in the pleadings. Moreover, in the instant case, the trial court's decision to address the fraud allegation constitutes an implicit decision to accept the amended complaint.

Nevertheless, we reject Moore's fraud claim and find SEMC entitled to summary judgment because the hospital had no duty to warn Moore of Burt's activities. The existence of a duty is a question of law for the court to determine. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265, 269–270.

Moore contends that a special hospital-patient relationship gave SEMC an independent duty to inform her of Burt's activities. In support of the existence of such a relationship, she cites *Albain v. Flower Hosp.* (1990), 50 Ohio St.3d 251, 553 N.E.2d 1038, and *Phillips v. Burt,* Montgomery C.P. No. 86–1004, unreported.

A careful reading of *Albain,* however, reveals no mention of a "special relationship" arising between a hospital and its patients. Conversely, in *Phillips* the trial court found that the plaintiff did state a prima facie fraud claim against SEMC. In so ruling, the court declared:

---

1. It is important to note that appellee's due process claims based on the provisions of R.C. 2305.251 are at best "premature." There is no evidence that the hospital attempted to present peer review information and was denied the opportunity to do so in defense of its credentialing decision concerning Dr. Burt. It may be that the Ohio Supreme Court will have to revisit the troubling question of whether strict adherence to the provisions of R.C. 2305.251 would deny the "due process" rights of a hospital facing a "negligent credentialing" cause of action.

"St. Elizabeth Medical Center was/and is in a *special relationship* with its physicians, employees, and particularly the patients. * * * To be specific, the Court finds that the Plaintiff has presented evidence that the Defendant St. Elizabeth Medical Center had a duty to the Plaintiff and further that it breached that duty."

In reaching its decision, the *Phillips* court relied exclusively upon *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 514 N.E.2d 709. We believe this reliance was misplaced. In *Gaines,* upon which Moore also relies, "employees or agents" of a health care facility misrepresented to a patient that her intrauterine device was removed during surgery. In reality, the device was not removed. The Ohio Supreme Court held that these facts gave rise to a fraud action against the hospital independent of an action for medical malpractice. *Id.* at 56, 514 N.E.2d at 712–713.

In the present case, however, as in *Phillips,* the representation alleged to constitute fraud was not made by "employees or agents" of SEMC. It was made by Burt, an independent contractor with staff privileges at SEMC. See *Albain, supra,* 50 Ohio St.3d at 256, 553 N.E.2d at 1044, fn. 5, recognizing that "[p]hysicians with staff privileges have long been considered independent contractors."

The law of agency holds a principal or employer vicariously liable for the actions of his agents or employees. *Id.* at 255, 553 N.E.2d at 1042–1043. Therefore, in *Gaines* the court properly found the health center liable for the fraudulent statements of its employees. In the present case, however, Burt was not an agent or employee of SEMC. Therefore, the medical center had no duty under agency law or the doctrine of *respondeat superior* to inform Moore of Burt's practices.

Moore cites no authority for the proposition that a hospital owes a patient a duty to reveal the activities of independent, non-agent physicians. Moore seeks support for this assertion from *Albain,* which states that a hospital has a duty to save its patients " 'from an illegal operation o[r] false, fraudulent, or fictitious medical treatment.' " *Albain, supra,* 50 Ohio St.3d at 259, 553 N.E.2d at 1046. A careful reading of *Albain,* however, reveals that the court's statement relates to negligent credentialing actions against a hospital. In essence, the *Albain* decision expresses the principle that if a hospital fails to protect its patients from fictitious medical treatment by independent contractors, the hospital exposes itself to a possible negligent credentialing action. The court's statement lends no support to the proposition that such a hospital exposes itself to liability for fraudulent concealment. Thus, while Moore asserts a general "duty" arising from SEMC's "special relationship" with its patients, Moore fails to ground this duty in any particular theory of law.

This court has failed to uncover any dispositive Ohio precedent on the issue. An Indiana appellate court recently found no "authority for the proposition that a hospital is in a fiduciary relationship with a patient under the treatment of his personal physician rather than one selected and provided for the patient by the hospital." *Hosp. Corp. of Am. v. Hiland* (Ind.App.1989), 547 N.E.2d 869, 875–876. Consequently, the court held that, "absent a confidential relationship, there existed no duty on the part of the hospital to disclose any information to [the plaintiffs], and thus no constructive fraudulent concealment for its failure to do so." *Id.* at 876.

Given Moore's inability to articulate a specific legal basis for SEMC's duty to disclose information, this court finds her argument unpersuasive. We note, however, that our decision does not leave patients without a remedy when a hospital conceals the malpractice of a non-employee physician. The court in *Albain* and *Browning* clearly indicated that the proper remedy in such instances is an action for negligent credentialing. Under such circumstances, a hospital owes a patient an independent duty to remove the incompetent physician.

Moreover, the physician-patient relationship undeniably imposes upon *a doctor* the duty to inform a patient about the true nature and extent of any proposed procedure. *Nickell v. Gonzalez* (1985), 17 Ohio St.3d 136, 17 OBR 281, 477 N.E.2d 1145 (stating that the tort of lack of informed consent requires a doctor's failure to disclose material risks). In addition, R.C. 2317.54 provides that "[n]o hospital * * * shall be held liable for a physician's failure to obtain an informed consent from his patient prior to a surgical or medical procedure * * *."

Although Moore accuses SEMC of improperly blurring the issues of informed consent and fraudulent concealment, in the present case we see little distinction. Moore concedes that a physician has the duty to obtain informed consent. Nevertheless, she claims a hospital "has a duty to prevent experimental surgery from being performed on a patient without his/her knowledge and to prevent an injury to the patient which it knows will occur."

We do not dispute this claim. A hospital does have a duty to prevent improper surgery and injury to its patients. However, the remedy for a breach of this duty is limited to a negligent credentialing action against the hospital for retaining the incompetent physician. Moreover, the patient may also bring a lack of informed consent or fraudulent concealment action against the doctor who withheld information regarding the true nature of the procedure. In addition, when a surgeon is an employee or agent of the hospital, the patient, under appropriate circumstances, may bring a fraudulent concealment claim against the hospital under agency law or the doctrine of *respondeat superior*. In the present case, however, we perceive Moore's fraud allegation against SEMC as an attempt

to circumvent the longstanding rule limiting informed consent actions to physicians.

Finally, Moore asserts that, absent the existence of a special hospital-patient relationship, SEMC still had an obligation to warn her about Burt's surgery. In support, Moore cites *Miles v. McSwegin* (1979), 58 Ohio St.2d 97, 12 O.O.3d 108, 388 N.E.2d 1367. In *Miles,* the court determined that a "special relationship" between the parties is not essential to the existence of a duty to disclose. Thus, the court rejected a real estate agent's assertion that he had no duty to disclose the presence of termites in a home purchased by the plaintiff. The agent, acting for the seller, represented to the plaintiff that the home was free of defects.

Finding the seller's agent liable for fraud, the court stated:

"It is well established that an action for fraud and deceit is maintainable not only as a result of affirmative misrepresentations, but also for negative ones, such as the failure of a party to a transaction to fully disclose facts of a material nature *where there exists a duty to speak.* * * * Moreover, it should be axiomatic that parties who directly benefit from and knowingly participate in a transaction tainted with fraud or deceit, *who are under a duty to disclose their knowledge* and fail to do so, are liable for damages directly and proximately resulting from their silence." (Citations omitted and emphasis added.) *Id.* at 99–100, 12 O.O.3d at 109–110, 388 N.E.2d at 1368–1369.

Furthermore, the court, citing the Restatement of Torts, explained:

" [A] party is under a duty to speak, and therefore liable for non-disclosure, if the party fails to exercise reasonable care to disclose a material fact which may justifiably induce another party to act or refrain from acting, and the non-disclosing party knows that the failure to disclose such information to the other party will render a prior statement or representation untrue or misleading." *Id.* at 100, 12 O.O.3d at 110, 388 N.E.2d at 1369.

We believe the situation in *Miles* is clearly distinguishable from the present case, in which Burt maintained an independent contractor relationship with SEMC and a direct fiduciary relationship with Moore. In *Miles,* the court held that a real estate broker, acting as an agent for the seller, owed the buyer a duty to disclose relevant facts. In Moore's case, however, her fraudulent concealment claim fails because she makes no threshold showing that SEMC had a duty to disclose any information.

Indeed, the *Albain* court specifically rejected the grounds for relief on which appellant's action for fraud and misrepresentation is based. A hospital's "duty to speak" concerning particular treatment within the ambit of medical malpractice committed by a staff physician is a product of the doctrine of corporate negligence. In *Albain,* after establishing a hospital's general duty under the doctrine

of *respondeat superior* for the negligence of its physician employees and its limited duty for the negligent credentialing of physicians who are independent contractors, the Supreme Court of Ohio stated:

"We are aware that a number of our sister jurisdictions have expanded the independent duty of hospitals so as to require them to totally ensure the patient's safety while at the hospital. This expansion of a hospital's duties, including a duty to oversee a physician's care of individual patients and a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patient, has progressed in varying degrees, under the moniker of 'corporate negligence,' towards imposing strict liability upon hospitals. See, generally, Note, *supra*, 17 St. Mary's L.J. at 558–559. We are not convinced of the wisdom of such expansive liability and, accordingly, we hold that a hospital may be held directly liable for the malpractice of an independent physician with staff privileges only to the extent discussed above." *Id.*, 50 Ohio St.3d at 259, 553 N.E.2d at 1046.

Therefore, this court cannot hold that SEMC's failure to warn its patients of the irregularities and dangers of Dr. Burt's perversely named "love surgery" gives rise to an action for fraud and misrepresentation.

Therefore, we hold, as a matter of law, that SEMC had no duty to disclose any information it allegedly possessed regarding Burt's practices. Accordingly, we overrule Moore's fourth assignment of error.

Having sustained Moore's first, second and third assignments of error, we reverse those portions of the trial court's judgment and remand the cause for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

GRADY, P.J., and FREDERICK N. YOUNG, J., concur.